1   Andrew A. Kapur  (SBN 233021)
    ATTORNEY AT LAW
2   1516 Oak Street, Suite 317
3   Alameda, CA 94501
    Telephone:  (510) 473-0758
4   Facsimile:  (510) 473-3562

5   David I. Kelvin (SBN 95190)
    LAW OFFICE OF DAVID I. KELVIN
6   15843 40th Avenue
7   Clearlake, CA 95422
    Telephone: (510) 393-9170
8   Facsimile:  (707) 461-5157

9   Attorneys for Plaintiffs
    DENNIS WANKEN and ELENI WANKEN
10

11                 UNITED STATES DISTRICT COURT
12
                NORTHERN DISTRICT OF CALIFORNIA
13

14  DENNIS WANKEN and ELENI WANKEN,          Case No.:  3:17-cv-4474-EDL

15              Plaintiffs,                   **FIRST AMENDED COMPLAINT FOR
                                              BREACH OF CONTRACT**
16        v.

17  KNOWLEDGE UNIVERSE EDUCATION, LLC;
    KINDERCARE EDUCATION, LLC; and DOES 1
18  to 5,

19              Defendants.

20        Plaintiffs DENNIS WANKEN and ELENI WANKEN (collectively "Plaintiffs") complain

21  and allege against defendants KINDERCARE EDUCATION, LLC; KNOWLEDGE UNIVERSE

22  EDUCATION, LLC; and DOES 1 to 5 (collectively "Defendants") in this First Amended Complaint

23  (the "FAC") as follows:

24                           **PARTIES**

25        1.    DENNIS WANKEN is, and at all times herein relevant was, an individual with his

26  domicile located in the County of Contra Costa and the Town of Moraga in the State of California.

27        2.    ELENI WANKEN is, and at all times herein relevant was, an individual with her

28  domicile located in the County of Contra Costa and the Town of Moraga in the State of California.

1

3.     Defendant KINDERCARE EDUCATION, LLC is a Delaware Limited Liability Company with its principal place of business in the State of Oregon.  KINDERCARE EDUCATION, LLC was formerly known as KNOWLEDGE UNIVERSE EDUCATION, LLC.

4.     The true names and capacities, whether individual, corporate, associate, or otherwise, of defendants named herein as Does 1 through 5, inclusive, are unknown to Plaintiffs, who therefore sue said defendants by fictitious names.  Plaintiffs are informed and believe and thereon allege that each of the defendants designated herein as a fictitiously named defendant is in some manner responsible for the events and happenings herein referred to.  When Plaintiffs ascertain the true names and capacities of Does 1 through 5, inclusive, Plaintiffs will ask leave of this Court to amend this complaint by setting forth their true names and appropriate charging allegations.

5.     Plaintiffs are informed and believe and based thereon allege that at all times herein mentioned, each of the defendants named in the caption of this complaint, which is incorporated herein by reference, was, and is, the agent, servant and/or employee of each of the other defendants, and that all of the things alleged to have been done by said defendants were done in the capacity of, and as the agents of, the other co-defendants.

**JURISDICTION AND VENUE**

6.     On July 5, 2017 Plaintiffs initiated this action in the California Superior Court in and for the County of Contra Costa.  On August 8, 2017 Defendants removed the action to this Court pursuant to 28 U.S.C. § 1332(a)(1) because the action is between citizens of different states and the amount in controversy exceeds $75,000.

7.     Venue of this action is proper in the United States District for the Northern District of California because it comprises, in part, Contra Costa County.  28 U.S.C. § 84(a).

**FACTS**

8.     In October of 2014 Plaintiffs purchased the real property commonly known as 909 Camino Ramon, Danville, California (the "Property").

9.     Defendants' predecessor in interest had a lease agreement (the "Agreement") with the former owner of the Property.  A true and correct copy of the Agreement is attached to this FAC as Exhibit A.

2

11.     The Agreements states, in pertinent parts, as follows:

"11.   **Maintenance**  Leassee, at its cost, shall maintain in good condition all parts, buildings, roofs, mechanical systems, plumbing and electrical systems and all other interior and exterior parts of the leased premises.

On the last day of the term hereof, or any sooner termination, Leassee shall surrender the Leased Premises to Lessor in the same condition as received, ordinary wear and tear excepted, free and clean of debris.  Leassee shall repair any damage to the Leased Premises occasioned by the installation or removal of its trade fixtures, furnishings, and equipment."

. . .

"19.  **Attorneys Fees**  In the event that either party shall bring suit for the breach of any provision of this Lease or for any other relief against the other party hereunder, then all costs and expenses, including reasonable attorneys' fees, incurred by the prevailing party therein shall be paid by the other party whether or not the action in prosecuted to judgment.  The "prevailing party" shall be determined by an arbitrator or judge."

11.     On December 31, 2008 the former owner of the Property and Defendant's predecessor in interest extended the term of the Agreement through June of 2012.  A true and correct copy of this extension of the Agreement is attached to this FAC as Exhibit B.

12.     On January 12, 2012 the prior owner of the Property and Defendant again extended the lease agreement from July 1, 2012 through June 30, 2014.  A true and correct copy of this extension to the Agreement is attached to this FAC as Exhibit C.

13.     On December 20, 2013 Defendant sent the prior owner of the Property a letter stating that it would exercise its option to extend the term of the lease agreement for another three (3) years commencing on July 1, 2014 and ending on June 30, 2017.  A true and correct copy of this letter is attached to this FAC as Exhibit D

14.     On May 28, 2014 Defendant's property manager sent the prior owner of the Property stating that Defendant would cease operations at the Property on or about June 27, 2014 but "will remain responsible for all obligations under the Lease until such time as the Lease has expired."  A true and correct copy of this letter is attached to this FAC as Exhibit E.

## FIRST CAUSE OF ACTION
### (Breach of Contract)

15.     Plaintiffs incorporate by reference herein, as though fully set forth, each of the

3

allegations contained in Paragraphs 1-14, above.

16.    Plaintiffs have had performed all obligations under the Agreement and extensions thereto.

17.    Defendants have breached the Agreement, and the extensions thereto, by failing to perform maintenance work to the Property as required by the terms of the Agreement.  Maintenance that Plaintiffs had to perform as a result, and/or will need to perform, and its respective cost includes:

a.    A structural analysis of the Property to determine the scope of future work. $1,700.

b.    Sweeping the driveways, cleaning the gutters, and removal of debris from the property.  $1,404.

c.    Replacement of windows.  $7,877.

d.    Replacement of HVAC system.  $18,500

e.    Removal and replacement of wood deck framing and installation of metal flashing.  $3,200.

f.    Removal and replacement of rotten wooden siding and sub-floor.  Removal and replacement of door framing due to dry rot.  $3,000.

g.    Removal of carpet wainscoting and white board panels and damaged drywall. Sealing of existing drywall to protect from further damage.  $1,000.

h.    Replacement of rotten door frames and sills; replacement of rotten siding; replacement of rotten wall studs; replacement of rotten mud sill and rim joist; replacement of damaged roof sheeting; replacement of facia material; replacement of damaged sheetrock.  $65,000.

i.    Removal of existing fluorescent light fixtures and installation of LED can light housings.  $3,640

j.    Removal of old windows, reframing of openings in 11 locations, installation of new windows.  Frame front and back entry and exit windows; reframe two exterior doors, take out existing and install 7 new exterior doors.  $9,200.

k.    Frame in open vaulted entry ceiling.  $1,200.

4

1         l.     Reinstall concrete sidewalks and ADA accessible ramps.  Additional concrete

2              work.  $21,565.

3         m.    Flushing of drains and removal of debris.  Removal of irrigation and drinking

4              fountain plumbing from building.  $950.

5         n.     Framing of roof over existing porch and installation of cap sheet roofing

6              system.  $11,475.

7         o.     Pruning of trees, removal of leaves, installation of mulch.  $1,368.

8         p.     Pest control – ground squirrels.  $120.

9      18.    Plaintiffs have sustained damages in so far as they have performed, and/or will have to

10  perform, at there own expense the maintenance work, as set forth in paragraph 17, above, that

11  Defendants were obligated to perform but failed to do so.

12      19.    Plaintiffs' estimate for the cost of this maintenance work, as set forth in paragraph 17,

13  above, to be in the amount of $151,200; Plaintiffs have therefore been damaged in that amount.

14      20.    Plaintiffs are entitled to reasonable attorneys' fees pursuant to the Agreement

15  according to proof.

16      WHEREFORE Plaintiffs pray for judgment against Defendants for:

17      1.    Compensatory damages in the amount of $151,200;

18      2.    Reasonable attorneys' fees;

19      3.    Costs of suit incurred in bringing this action; and

20      4.    Such other and further relief as the Court may deem just and proper.

21  Dated:  September 28, 2017         ANDREW A. KAPUR, ATTORNEY AT LAW

22

23                       /S/ Andrew A. Kapur
                     Andrew A. Kapur

24                       Attorney for Plaintiffs
                     DENNIS WANKEN and ELENI WANKEN

25

26

27

28

5

EXHIBIT A

(Cowell Preschool)

LEASE

THIS LEASE is entered into this _13_ day of ⌒_June_, 1994, between Children's Discovery Centers of America, Inc., with offices at 851 Irwin Street, Suite 200, San Rafael, California 94901, hereinafter called "Lessee", and Leonora Maria Holmes (Bianchi) with an address of 1185 Pine Lane, Clayton, California 94517, hereinafter called "Lessor."

THE PARTIES AGREE AS FOLLOWS:

1. Leased Premises. Lessor leases to Lessee, and Lessee hires from Lessor, for the term, at the rental, and upon the terms and conditions of this Lease, the real property commonly known as 4347 Cowell Road, Concord, California _94518_, and more particularly described in Exhibit "A" attached hereto and made a part hereof. Said property, buildings and improvements shall hereinafter be referred to as the "Leased Premises" or "Premises," and includes a building aggregating approximately 4,698 square feet.

This Lease does not include offices located on the second floor of a building marked on Exhibit B consisting of approximately 3,000 square feet. The area not included is cross-hatched and is retained by owner.

2. Initial Term. The initial term of this Lease shall be for a period of ten (10) years, hereinafter called the "Lease Term", commencing on the Closing of the Purchase Agreement February 28, 1994, between Lessee and Educare Management Corporation (a California corporation owned and controlled by Lessor) for the sale and purchase of the Lessor's day care and preschool business conducted at the Leased Premises (the "Purchase Agreement"). Lessor and Lessee shall execute an amendment to this Lease upon Lessee's occupancy confirming said commencement date ("Commencement Date"). If the lease commences on other than the

eccowlp.lse

first of a month then the term shall be ten years from the first of the month following the month in which the Lessee commences occupancy.

3. <u>Options to Extend</u>. Lessee may, at it's option, extend the original term of this Lease for three (3) additional periods of five (5) years each, subject to all of the provisions of this Lease. Failure to exercise the option for any period shall nullify the option for all subsequent periods. Lessee shall give Lessor written notice either irrevocably exercising or declining to exercise each option at least One Hundred Eighty (180) days before the last day of the term or any extension thereof.

4. <u>Rent</u>. Lessee shall pay to Lessor as monthly rent the following sums during the initial term of this Lease and any option periods:

| Year | Monthly Rent | Annual Rent |
|------|-------------|-------------|
| 1-5  | $3,762.58   | $45,151.00  |
| 6    | $4,164.34   | $49,972.00  |

The monthly rent due during the term shall be paid monthly in advance on the first of each month without offset or deduction. All rent shall be paid to Lessor at the address to which notices to Lessor are given. If payments due are not received by the fifth of each month, Lessee shall pay a late fee equal to ten percent (10%) of the payment then due or a late fee equal to twenty percent (20%) of the payment then due if the payment is not made within five days of written notice by Lessor.

Following the fifth full lease year the annual rent shall be Forty-Nine Thousand Nine Hundred Seventy-Two Dollars ($49,972.00) paid in equal monthly installments of Four Thousand One Hundred Sixty-Four Dollars and Thirty-Four Cents ($4,164.34) and each year thereafter such rent shall increase three percent (3%).

eccowip.lse

5. Conditions of Premises  Lessor represents, to the best of her knowledge that at the commencement of the term, that the Leased Premises conform to all applicable laws, orders, ordinances and regulations, including but not limited to all occupational, health and safety or environmental laws under which Bianchi School has been continually licensed since 1974 and does not apply to laws applicable in the event of change of ownership or protection, and are in good condition and repair, suitable for the conduct of the business for which the premises are let hereunder.  Lessor further warrants to the best of her knowledge that all buildings are free from pests and insects of a woodeating or boring nature, and that all mechanical systems, including the heating, air conditioning and ventilating systems are in good repair and working condition and have been regularly maintained.

6. Utilities.  Lessee shall pay for all water, gas, heat, light, power, telephone service, rubbish removal, and all other utilities of any kind and nature whatsoever applied to and used on the Leased Premises.

7. Taxes.  Lessee shall pay all real property taxes, and any registration fees for portable buildings which, during the term of this Lease, may be levied on or assessed against the Leased Premises and all improvements to the property thereon.  Lessee shall pay the tax collector the amount of the real property tax prior to the later of thirty (30) days after receipt of the tax bill from Lessor, or fifteen (15) days prior to the last date said bill or any installment may be paid without penalty.  Lessee shall have no liability to pay any late fees or assessment or increased tax unless the Lessor has provided Lessee the tax bill at least thirty (30) days prior to the date such tax is due.

The term "real property taxes" as used in this Lease shall include all real property taxes on the buildings and the land on which the buildings are situated, and the various estates in the buildings and the land.  For purposes hereof, "real property taxes" shall not include any amount that results from a reassessment of the leased premises resulting from a sale of the leased premises or a change in ownership.  For purposes of this Lease "Change in Ownership" has the same definition as in California Revenue and Taxation Code sections 60-62, or any amendments or successor statutes to those sections.

Lessee shall pay all taxes when due for all personal property taxes or any business taxes, license fees and registration or other fees related to any modular or portable buildings on the Leased Premises.

Lessee at its cost shall have the right, at any time, to seek a reduction in the assessed valuation of the premises or to contest any real property taxes that are to be paid by Lessee.  If Lessee seeks a reduction or contests the real property taxes, the failure on Lessee's part to pay the real property taxes shall not constitute a default as long as Lessee complies with the provisions of this paragraph.

Lessor shall not be required to join in any proceeding or contest brought by Lessee unless the provisions of any law require that the proceeding or contest be brought by or in the name of Lessor or any owner of the premises.  In that case Lessor shall join in the proceeding or contest or permit it to be brought in Lessor's name as long as Lessor is not required to bear any cost.  Lessee, on final determination of the proceeding or contest, shall immediately pay or discharge any decision or judgment rendered, together with all costs, charges interest, and penalties incidental to the decision or judgment.

Lessee shall pay all taxes prior to contesting the amount due and shall file for relief only after such taxes have been paid.

8.  _Assignment and Subleasing_.  Lessee may not assign this Lease or sublet all or any part of the Leased Premises without Lessor's prior written consent, which consent shall not be unreasonably withheld.  Lessee shall pay Lessor's reasonable attorneys' fees (not to exceed $500.00) incurred in determining whether to consent to such assignment or sublet, whether or not such consent is ultimately given.

Lessee agrees that Lessor's consent to any such assignment or sublet shall in no event be construed as releasing Lessee from its past, present and future liabilities and obligations hereunder nor as relieving Lessee from the requirement of obtaining Lessor's prior written consent to any further assignment or subletting.

eccowell.Lse                                          4

9.  <u>Use and Occupancy</u>.  The Leased Premises shall be used for the purpose of conducting and carrying on a child care service and day care center, or for any other legal purpose with the prior written consent of Lessor, which consent shall not be unreasonably withheld.

10.  <u>Trade Fixtures and Signs</u>.  Lessee may install and affix to the Leased Premises such trade fixtures as Lessee reasonably requires so long as they do not damage or cause a diminution in value of the Leased Premises, and are erected and installed in compliance with local ordinances.  Lessee shall be permitted to remove from the Leased Premises at any time during the term hereof or within thirty (30) days after expiration of this Lease such trade fixtures as Lessee has installed upon the Premises, provided, however, that such removal can be effected without injury to the Leased Premises, and provided further that any fixture shall not have become, by the manner in which it is affixed, an integral part of the Leased Premises.

11.  <u>Maintenance</u>.  Lessee, at its cost, shall maintain in good condition all parts, buildings, roofs, mechanical systems, plumbing and electrical systems and all other interior and exterior parts of the Leased Premises.

On the last day of the term hereof, or on any sooner termination, Lessee shall surrender the Leased Premises to Lessor in the same condition as received, ordinary wear and tear excepted, free and clean of debris.  Lessee shall repair any damage to the Leased Premises occasioned by the installation or removal of its trade fixtures, furnishings and equipment.

12.  <u>Alterations</u>.  Lessee shall not make any structural alterations or additions to the Premises without Lessor's prior written approval, which shall not be unreasonably withheld.

Lessee shall have the right to make, without Landlord's consent, non-structural alterations to the interior of the premises that Tenant requires to conduct its business on the premises.

13.  <u>Mechanic's Lien and Notice of Nonresponsibility</u>.  Lessee agrees to pay promptly for all labor done or materials furnished for any work of repair, maintenance, or work of

LEASE (con't)

improvement, alteration or addition done by Lessee in connection with the Leased Premises, and to keep and to hold the Leased Premises free, clear, harmless of and from all liens that could arise by reason of any such work. If any such lien shall at any time be filed against the Leased Premises, Lessee shall either cause the same to be discharged of record within twenty (20) days of the date of filing the same, or, Lessee shall, if Lessor consents in writing prior thereto, furnish such security as may be necessary or required to prevent any foreclosure proceedings against the Leased Premises during the tenancy of any contest of such lien. Nothing contained herein shall imply any consent or agreement on the part of Lessor to subject Lessor's interest in the Leased Premises or any of the fixtures and equipment therein, to liability under any mechanic's liens.

Lessor shall at all times have the right to post and to keep posted on the Leased Premises such notices provided for under the laws of the State of California for the protection of the Leased Premises from mechanic's liens or liens of a similar nature. If Lessee makes any alterations to the premises as provided in this paragraph, the alterations shall not be commenced until fifteen (15) days after Lessor has received written notice from Lessee stating the date the installation of the alterations is to commence so that Lessor can post and record an appropriate notice of nonresponsibility.

14. Indemnity and Insurance. Lessor or their agents shall not be liable at any time for any loss, damage, or injury of any kind or nature whatsoever to the Leased Premises or any person whomsoever at any time occasioned by or arising out of any act or omission of the Lessee, or of anyone holding under Lessee or the occupancy or use of the Leased Premises or any part thereof or any common area by or under the Lessee, or directly or indirectly from any state or condition of the Leased Premises or any part thereof during the term of this Lease.

Lessee shall indemnify and hold Lessor harmless against and from any and all claims arising from Lessee's use of the Leased Premises or the conduct of its business or profession or from any activity, work, or thing done, permitted or suffered by the Lessee in or about the Leased Premises. Lessee shall further indemnify and hold harmless Lessor against and

eccowell.Lse

from any and all claims arising from any breach or default in the performance of any obligation on Lessee's part to be performed under the terms of this Lease, or arising from any act or negligence of the Lessee or its agents, contractors, servants, licensees, invitees or employees, and from and against all costs, attorneys' fees, expenses and liabilities incurred in or about any such claim or any action or proceeding brought thereon.

Lessee shall carry and maintain during the entire term hereof, at Lessee's sole cost and expense, and naming Lessor as an additional insured and providing Lessor with a Certificate of Insurance stating such, the following types of insurance, in the amounts specified and in the form provided for herein, and which shall not be changed without at least 10 days prior notice to the Lessor;

a. Broad form comprehensive public liability insurance with limits of not less than ONE MILLION DOLLARS ($1,000,000.00), and property damage insurance with limits of not less than ONE HUNDRED THOUSAND DOLLARS ($100,000.00) (Three Hundred Thousand Dollars ($300,000.00) for the center located on Cowell Road) insuring against any and all liability of the Lessee with respect to the Leased Premises or arising out of the maintenance, use or occupancy thereof.

b. Lessee shall maintain "all risk" insurance coverage, including, without limitation, coverage for loss or damage by fire, water damage, collapse, flood, malicious mischief, vandalism, sprinkler leakage, and all those perils included from time to time in the so-called broad form extended coverage insurance endorsement. Said insurance shall provide coverage for the buildings and all improvements and fixtures, both those under construction and those contemplated, as well as business interruption coverage, which shall from time to time be upon or part of the building, in an amount not less than ninety percent (90%) of the full replacement cost of the improvements without deduction. Lessor will be named additional insured as her interests appear, as well as any lender which has a secured interest in the Leased Premises.

A certificate of insurance for the required coverage shall be delivered to Lessor prior to the Commencement Date hereof and such insurance or replacements thereof shall be maintained continuously through the term hereof. The certificate shall provide that Lessor receive at least thirty (30) days' prior written notification in the event of cancellation, or amendment, of said insurance. The insurance policy shall be issued in the names of Lessee, Lessor and Lessor's lender, if any, as their interests appear. Lessee shall pay the premiums for maintaining all insurance required hereunder. So long as uninterrupted insurance coverage is provided hereunder, there shall be no breach hereof, notwithstanding the expiration of any applicable policy.

15.    Restoration. Lessee shall give immediate written notice to Lessor of partial or total damage to the Leased Premises by fire or other casualty covered by the insurance required by the Lease. The Leased Premises shall be repaired and restored as speedily as possible after the date of such damage to the extent of the proceeds of the insurance carried pursuant to this Lease.

If, during the term, the building and other improvements on the Leased Premises are totally or partially destroyed from any other cause, rendering the Premises totally or partially inaccessible or unusable, Lessor shall restore to the extent of the insurance proceeds, the building and other improvements on which the Premises are located to substantially the same condition as they were in immediately before destruction, if the restoration can be made under the existing laws and can be initiated within ninety (90) working days after the date of destruction. Such destruction shall not terminate this Lease, however, but rent shall be abated for any period in excess of six months following the date of such destruction if the leased premises continue to be unusable by Lessee for the conduct of its business.

16.    Condemnation.

a. "Condemnation or "Eminent Domain" means (i) the exercise of any governmental power, whether by legal proceedings or otherwise, by condemnor; and (ii) a

voluntary sale or transfer by Lessor to any condemnor, either under threat of condemnation or while legal proceedings for condemnation are pending.

b. "Date of taking" means the date the condemnor has the right to possession of the property being condemned.

c. "Award" means all compensation, sums, or anything of value awarded, paid, or received on a total or partial condemnation.

d. "Condemnor" means any public or quasi-public authority, or private corporation or individual, having the power of condemnation.

If, during the term of this Lease or during the period of time between the execution of this Lease and the date the term commences, there is any taking of all or any part of the building, other improvements, or land of which the Leased Premises are a part, or any interest in this Lease by condemnation, the rights and obligations of the parties shall be determined pursuant to this section.

If any portion of the Leased Premises is taken by condemnation, this Lease shall remain in effect except that Lessee can elect to terminate this Lease if the remaining portion of the Leased Premises is reasonably rendered unsuitable for Lessee's continued use of the Leased Premises. If Lessee elects to terminate this Lease, Lessee must exercise its right to terminate pursuant to this paragraph by giving written notice to Lessor within thirty (30) days after the nature and extent of the taking have been finally determined. If Lessee elects to terminate this Lease as provided in this paragraph, Lessee also shall notify Lessor of the date of termination, which date shall not be earlier than ninety (90) days nor later than one hundred twenty (120) days after Lessee has notified Lessor of its election to terminate, except that this Lease shall terminate on the date of taking if the date of taking falls on a date before the date of termination as

designated by Lessee. If Lessee does not terminate this Lease within the thirty (30) day period after the nature and extent of the taking have been determined, this Lease shall continue in full force and effect.

On a total taking of the Leased Premises, this Lease shall terminate on the date of taking and the award should be the property of Lessor less the following amount to be paid Lessee.

If any part of the premises shall be taken or condemned for a public or quasi-public use, and a part thereof remains which is susceptible of occupation hereunder, this Lease shall, as to the part so taken, terminate as of the date title shall vest in the condemnor, and the rent payable hereunder shall be adjusted so that the Lessee shall be required to pay for the remainder of the term only such portion of such rent as the value of the part remaining after the condemnation bears to the value of the entire premises at the date of condemnation; but in such event Lessor shall have the option to terminate this Lease as of the date when title to the so condemned vests in the condemnor. If all of the premises, or such part thereof be taken or condemned so that there does not remain a portion susceptible for occupation hereunder, this Lease shall thereupon terminate. If a part of all of the premises be taken or condemned, all compensation awarded upon such condemnation or taking shall go to the Lessor and the Lessee shall have no claim thereto, and the Lessee hereby irrevocably assigns and transfers to the Lessor any right to compensation or damages to which the Lessee may become entitled during the term hereof by reason of the condemnation of all, or a part of the premises; provided that, Lessee shall have the right, to the extent that Lessor's award is not reduced or prejudiced, to claim from the condemnor such compensation as may be recoverable by Lessee in its own right for relocation expenses and damages to Lessee's personal property.

eccowell.Lse

17.  Default.   The occurrence of any of the following shall constitute a material default and breach of this Lease:

a.  A failure by Lessee to pay the rent, or to make any other payment required to be made by Lessee hereunder, where such failure continues ten (10) days after written notice thereof;

b.  A failure by Lessee to observe and perform any other provision of this Lease to be observed or performed by Lessee, where such failure continued for fifteen (15) days after written notice thereof by Lessor to Lessee; provided that if the nature of such default is such that the same cannot reasonably be cured within such time period, Lessee shall within such period commence such cure and thereafter diligently prosecute the same to completion.

c.  The making by Lessee of any general assignment for the benefit of creditors; the filing by or against Lessee of a petition to have Lessee adjudged a bankrupt or of a petition for reorganization or arrangement under any law relating to bankruptcy; the appointment of a trustee or receiver to take possession of substantially all Lessee's assets located at the Leased Premises or of Lessee's interest in this Lease, where possession is not restored to Lessee within thirty (30) days; or the attachment, execution or other judicial seizure of substantially all of Lessee's assets located at the Leased Premises or of Lessee's interest in this Lease, where such seizure is not discharged within thirty (30) days.

18.  Remedies.  In the event of any material default or breach by Lessee, Lessor at any time thereafter, at Lessor's option and without limiting the Lessor in the exercise of any other rights or remedy which Lessor may have at law or in equity by reason of such default or breach, with or without notice or demand may:

a.  Re-enter the Leased Premises with or without process of law or written notice and take possession of the same and of all equipment and fixtures of Lessee therein, and expel or remove Lessee and all other parties occupying the Leased Premises, using such

LEASE (CONT) 2

force as may be reasonably necessary to do so, without being liable to any prosecution for re-entry or for the use of such force, and, without terminating this Lease, and without notice of any kind to Lessee, may at any time and from time to time relet the Leased Premises or any part thereof as Lessor may deem proper  In such event Lessor may receive and collect the rent from such reletting or run the business and apply it and any revenues against any amounts due from Lessee hereunder (including but without limitation such expenses as Lessor may have incurred in recovering possession of the Leased Premises and starting the day care business by placing the same in good condition, altering or repairing the same for reletting, and all other expenses, commissions and charges, including attorneys' fees, which Lessor may have paid or incurred in connection with such repossession and reletting). Whether or not the Leased Premises are relet, Lessee shall pay Lessor all amounts required to be paid by Lessee up to the date of Lessor's re-entry or start up of the business, and thereafter Lessee shall pay Lessor until the end of the term hereof the amount of all rent and other charges required to be paid by Lessee hereunder, less the proceeds of such reletting during the term hereof, if any, after payment of Lessor's expense as provided above. Any covenant not to compete between Lessor and Lessee would be of no further force and effect following Lessor's repossession.

19. Attorney Fees. In the event that either party shall bring suit for the breach of any provision of this Lease or for any other relief against the other party hereunder, then all costs and expenses, including reasonable attorneys' fees, incurred by the prevailing party therein shall be paid by the other party whether or not the action is prosecuted to judgment. The "prevailing party" shall be determined by an arbitrator or judge.

20. Subordination. This Lease shall be subordinate to any ground lease, mortgage, deed of trust, or any other hypothecation or security now or hereafter placed upon the real property of which the Leased Premises are a part and to any and all advances made on the security thereof and to all renewals, modifications, consolidations, replacements and extensions

thereof.  The provisions of this Lease concerning the disposition of insurance proceeds, restoration of the premises and condemnation proceedings (paragraphs 14, 15 and 16 respectively) shall prevail over any conflicting provision of such encumbrance.

Lessee shall execute any and all documents reasonably requested by Lessor to effectuate a subordination and/or an attornment of this Lease and/or any of Lessee's rights under this Lease.

21.  Quiet Possession.  Upon Lessee paying the rent for the Leased Premises and observing and performing all of the covenants, conditions and provisions on Lessee's part to be observed and performed hereunder, Lessee shall have quiet possession of the Leased Premises for the entire term hereof subject to all of the provisions of this Lease  The parties executing this Lease represent and warrant to the other party that they are fully authorized and legally capable of executing this Lease on behalf of Lessor and Lessee, and that such execution is binding upon all parties holding an ownership interest in the Property.

22.  Right to Cure Defaults of Mortgage.  Lessor represents to Lessee that she is presently obligated under the following secured loans:

| Lender | Principal Amount | Monthly Payment | Loan Number |
|--------|------------------|-----------------|-------------|
| Bank of America | 4 77 | 2 00 | 9S | 20·237 |

In the event Lessor defaults on any of the secured loans and said default was not the result of Lessee failing to pay the full rent owing Lessor, Lessee shall be entitled to pay directly to the lender an amount sufficient to cure said default.  Said payment shall be deducted from Lessee's rent payment to Lessor under this lease and, if any, all other similarly dated leases and the purchase money note executed in connection with the Purchase Agreement.

eccowell.Lse

23. <u>Lessor's Right to Enter</u>   Lessor may inspect the Leased Premises at all reasonable times during the time the Leased Premises are open for business.

24. <u>General Provisions</u>.

a.      No delay or omission in the exercise of any right or remedy of Lessor on any default by Lessee shall impair such a right or remedy or be construed as a waiver.

b.      The receipt and acceptance by Lessor of delinquent rent shall not constitute a waiver of any other default.

c.      No act or conduct of Lessor, including, without limitation, the acceptance of the keys to the Leased Premises, shall constitute an acceptance of the surrender of the Leased Premises by Lessee before the expiration of the term.  Only a written notice from Lessor to Lessee shall constitute acceptance of the surrender of the Leased Premises.

d.      Lessor's consent to or approval of any act by Lessee requiring Lessor's consent or approval shall not be deemed to waive or render unnecessary Lessor's consent to or approval of any subsequent act by Lessee.

e.      Any waiver by Lessor of any default must be in writing and shall not be a waiver of any other default concerning the same or any other provision of the Lease.

f.      Nothing contained in this Lease shall be deemed or construed by the parties or by any third person to create the relationship of principal and agent or of partnership or joint venture or of any association between Lessor and Lessee.

g.      All taxes or rent falling due hereunder shall be pr-rated on the basis of a thirty day month in any such month rent or taxes are due or commence on a day other than the first day of a month.

25. <u>Interest Limitation</u>.  Notwithstanding any other provision of this Lease, any right of Lessor to interest shall be limited to such amount and rate of interest as shall not be in violation of any usury law of any governmental body having jurisdiction thereover.

26. Controlling Law. This Lease shall be construed and interpreted in accordance with the laws of the State of California.

27. Severability. The unenforceability, invalidity or illegality of any provision of this Lease shall not render the other provisions of this Lease unenforceable, invalid or illegal.

28. Notices. Any notices or other communications required or contemplated under the provisions of this Lease shall be in writing and delivered in person, evidenced by a signed receipt, or mailed by certified mail, return receipt requested, postage prepaid, to the addresses indicated below the parties' signatures hereto, or to such other persons or addresses as Lessee and Lessor may provide by notice to the other. The date of the notice shall be the date of delivery if the notice is personally delivered, or the date of mailing if the notice is mailed by certified mail.

29. Memorandum of Lease. Upon the request of either party the other party shall join in the execution of a memorandum or "short form" of this Lease for the purpose of recordation. The memorandum or "short form" shall describe the parties, the Leased Premises and the term of this Lease, and shall incorporate this Lease by reference.

30. Estoppel Certificates. Within ten (10) days following any written request which Lessor may make from time to time, Lessee shall execute and deliver to Lessor a statement certifying: (i) the Commencement Date of this Lease; (ii) the fact that this Lease is unmodified and in full force and effect (or, if there have been modifications hereto, that this Lease is in full force and effect, as modified, and stating the date and nature of such modifications); (iii) the date to which the rent and other sums payable under this Lease have been paid; (iv) the fact that there are no current defaults under this Lease by either Lessor or Lessee except as specified in Lessee's statement; and (v) such other matters requested by Lessor. Lessor and Lessee intend that any statement delivered pursuant to this Section may be relied upon by any mortgagee, beneficiary,

purchaser or prospective purchaser of the Property or any interest therein.

LESSEE:                                  LESSOR

Children's Discovery Centers
    of America, Inc.
851 Irwin Street, Suite 200
San Rafael, California 94901             Leonora Maria Holmes

By: _____

Title: _____

851 Irwin Street, Suite 200
San Rafael, California 94901
Attention: Secretary

Dated as of _____, 1994.

EXHIBIT B

# FIRST AMENDMENT TO LEASE

THIS First Amendment to Lease ("First Amendment") is made and entered into as of the ___ day of _____ , 2008 ("Effective Date"), by and between LEONORA MARIA HOLMES (BIANCHI) ("Lessor"), and KNOWLEDGE LEARNING CORPORATION, a Delaware corporation ("Lessee").

## RECITALS

**WHEREAS**, Lessor and Children's Discovery Centers of America ("CDCA") entered into a Lease dated June 13, 1994 ("Lease"), for the premises commonly known as 909 Camino Real, Danville, California ("Premises"); and

**WHEREAS**, CDCA merged into Knowledge Learning Corporation by Certificate of Amendment of Certificate of Incorporation dated as of May 5, 2003; and

**WHEREAS**, Lessee executed its option to extend the Lease by Letter Agreement dated as of January 8, 2004; and

**WHEREAS**, the Lease is set to expire on June 30, 2009, and Lessor and Lessee desire to extend the term and modify the Lease;

**NOW, THEREFORE**, for and in consideration of the mutual covenants and promises herein and other good and valuable consideration, the receipt and sufficiency of which are acknowledged by the parties hereto, the parties agree as follows:

## AGREEMENT

1.    **Extension of Term.** Lessor and Lessee hereby extend the term of the Lease for a period of three (3) years commencing July 1, 2009, and ending June 30, 2012 (the "Extension Term").

2.    **Base Rent.** Base rent during the Extension Term shall be $65,510.60 per annum, payable at $5,459.22 per month.

3.    **Option to Extend.** Section 3 of the Lease shall be deleted in its entirety and replaced by the following:

"Lessee may, at its option, extend the original term of this Lease for two (2) additional periods of three (3) years each, subject to all of the provisions of this Lease. Lessee shall give Lessor written notice either irrevocably exercising or declining to exercise each option at least 180 days before the last day of the term or any extension thereof."

4.    **Lessor's Title and Authority.** Lessor hereby represents and warrants as follows: (i) Lessor has fee simple title to the Premises; (ii) Lessor has full right, power and authority to

execute, deliver and perform this First Amendment, and all required action and approvals therefor have been duly taken and obtained; and (iii) this First Amendment is and shall be binding upon and enforceable against Lessor in accordance with its terms and will not result in a breach of or constitute a default of any instrument or agreement to which Lessor or the Premises is subject or bound.  The individual executing this First Amendment on behalf of Lessor represents and warrants that she is duly authorized to do so and to bind herself as Lessor hereto.

5.    **Notice.**  Any notice given pursuant to the Lease shall be in writing addressed to the recipient at the address shown below, as such address may have been changed by written notice. Notice shall be (a) mailed by certified or registered mail with return receipt requested, postage prepaid, (b) delivered in person or by nationally recognized overnight courier, or (c) sent by telecopier.  Any notice (a) sent by mail, in person or by courier shall be deemed given when delivery is first attempted, and (b) sent by telecopier shall be deemed given when receipt has been confirmed either electronically or otherwise.  Notice given to a party in any manner not specified above shall be effective only if and when received by the addressee as demonstrated by objective evidence in the possession of the sender.

If to Lessor:

Ms. Leonora Holmes
1185 Pine Lane
Clayton, CA 94517
Fax: 925-672-8735

If to Lessee:

Knowledge Learning Corporation
Attn: Real Estate Dept.
650 NE Holladay Street, Suite 1400
Portland, OR 97232
Fax: 503-872-1447

6.    **Conflict in Terms.**  All other terms and conditions set forth in the Lease are hereby ratified and shall remain the same and the Lease continues to be in full force and effect.  To the extent that any provision of this First Amendment conflicts with the Lease as previously amended, the terms of this First Amendment shall control.

7.    **Counterparts; and Facsimile/Electronic Signatures.**  This First Amendment may be executed in counterparts and shall be effective when all parties have signed a copy and a fully executed copy has been delivered to Lessee.  Such counterparts taken together shall constitute one and the same agreement.  It is agreed that a facsimile or electronic signature shall evidence and constitute valid execution of the First Amendment and shall be binding on the signing party. At the request of either party, the parties will confirm facsimile or electronically transmitted signatures by signing an original document.

8.    **Ambiguity.**  All provisions of this First Amendment have been negotiated by both parties at arm's length and neither party shall be deemed the scrivener of this First Amendment.  This First Amendment shall not be construed for or against either party by reason of the authorship or alleged authorship of any provision hereof.

KinderCare  070346 (Danville, CA)
First Amendment

2

9.    **Joint and Several Liability.**  If Lessor consists of more than one person or entity, each such person or entity agrees to be jointly and severally liable for Lessor's obligations under the Lease.

IN WITNESS WHEREOF, the parties have executed this First Amendment as of the date indicated below.

**LESSOR:**

By: _____
    Leonora Maria Holmes (Bianchi)
Date: _____

**LESSEE:**

**KINDERCARE LEARNING CENTERS, INC.,**
a Delaware corporation

By: _____
Name:  Wayne Pipes
Its:    Vice President – Facilities & Development
Date: _____12_____

* "Exercising the options to extend shall re-instate the annual 3% increases in rent, as per the original lease dated 6/13/1994, with the initial 3% increase effective July 1, 2012."

# EXHIBIT C

## SECOND AMENDMENT TO LEASE

THIS Second Amendment to Lease ("Second Amendment") is made and entered into as of the  2  day of  January  2012 ("Effective Date"), by and between LEONORA MARIA HOLMES (BIANCHI) ("Lessor") and KNOWLEDGE UNIVERSE EDUCATION LLC, a Delaware limited liability company ("Lessee").

### RECITALS

WHEREAS, Lessor and Children's Discovery Centers of America, Inc. ("CDCA"), entered into a Lease dated June 13, 1994, for the premises commonly known as 909 Camino Ramon, Danville, California ("Premises"); and

WHEREAS, CDCA changed its name to Knowledge Learning Corporation ("KLC") by Certificate of Amendment of Certificate of Incorporation dated May 5, 2003; and

WHEREAS, KLC exercised its option to renew the Lease by extension letter dated January 8, 2004; and

WHEREAS, Lessor and KLC executed a First Amendment to Lease ("First Amendment") dated December 31, 2008; and

WHEREAS, KLC was converted to a limited liability company and is now known as Knowledge Universe Education LLC, as of May 2, 2011; and

WHEREAS, the Lease, as amended (the Lease and its amendment(s) are hereinafter together referred to as the "Lease"), is set to expire on June 30, 2012, and Lessor and Lessee desire to modify the terms of the Lease and extend the Lease term.

NOW, THEREFORE, for and in consideration of the mutual covenants and promises herein and other good and valuable consideration, the receipt and sufficiency of which are acknowledged by the parties hereto, the parties agree as follows:

### AGREEMENT

1.    **Extension of Term.**  Lessor and Lessee hereby extend the term of the Lease for a period of two (2) years commencing July 1, 2012, and ending June 30, 2014 (the "Extension Period").

2.    Base Rent.  Base annual rent during the Extension Period shall be $69,510.60 per annum, payable at $5,792.55 per month.

3.    **Option to Extend.**  Lessor and Lessee hereby agree to retain the options agreed to in Section 3 of the First Amendment and this Extension Period shall not be considered an exercise of an option.

KinderCare #070346 (Danville, CA)
Second Amendment

4.     **Lessor's Title and Authority.**  Lessor hereby represents and warrants as follows: (i) Lessor has fee simple title to the Premises; (ii) Lessor has full right, power and authority to execute, deliver and perform this Second Amendment, and all required action and approvals therefor have been duly taken and obtained; and (iii) this Second Amendment is and shall be binding upon and enforceable against Lessor in accordance with its terms and will not result in a breach of or constitute a default of any instrument or agreement to which Lessor or the Premises is subject or bound.  The individual executing this Second Amendment on behalf of Lessor represents and warrants that she is duly authorized to do so and to bind herself as Lessor hereto.

5.     **Notice.**  Any notice given pursuant to the Lease shall be in writing addressed to the recipient at the address shown below, as such address may have been changed by written notice. Notice shall be (a) mailed by certified or registered mail with return receipt requested, postage prepaid, (b) delivered in person or by nationally recognized overnight courier, or (c) sent by facsimile or electronic transmission.  Any notice (a) sent by mail, in person or by courier shall be deemed given when delivery is first attempted, and (b) sent by facsimile or electronic transmission shall be deemed given when receipt has been confirmed either electronically or otherwise.  Notice given to a party in any manner not specified above shall be effective only if and when received by the addressee as demonstrated by objective evidence in the possession of the sender.

If to Lessor:                                  Ms. Leonora Holmes
                                               1185 Pine Lane
                                               Clayton, CA  94517
                                               Fax: 925-672-8735

If to Lessee:                                  Knowledge Universe Education LLC
                                               Attn: Real Estate Dept.
                                               650 NE Holladay Street, Suite 1400
                                               Portland, OR 97232
                                               Fax: 503-872-1447

6.     **Conflict in Terms.**  All other terms and conditions set forth in the Lease and the First Amendment to Lease dated December 31, 2008 are hereby ratified and shall remain the same and the Lease and First Amendment shall each continue to be in full force and effect.  To the extent that any provision of this Second Amendment conflicts with the Lease and/or the First Amendment, the terms of this Second Amendment shall control.

7.     **Counterparts; and Facsimile/Electronic Signatures.**  This Second Amendment may be executed in counterparts and shall be effective when all parties have signed a copy and a fully executed copy has been delivered to Lessee.  Such counterparts taken together shall constitute one and the same agreement.  It is agreed that a facsimile or electronic signature shall evidence and constitute valid execution of the Second Amendment and shall be binding on the signing party.  At the request of either party, the parties will confirm facsimile or electronically transmitted signatures by signing an original document.

2

KinderCare  070343 (Walnut Creek, CA)
Second Amendment

8.    **Ambiguity.**  All provisions of this Second Amendment have been negotiated by both parties at arm's length and neither party shall be deemed the scrivener of this Second Amendment.  This Second Amendment shall not be construed for or against either party by reason of the authorship or alleged authorship of any provision hereof.

9.    **Joint and Several Liability.**  If Lessor consists of more than one person or entity, each such person or entity agrees to be jointly and severally liable for Lessor's obligations under the Lease.

    **IN WITNESS WHEREOF,** the parties have executed this Second Amendment as of the date indicated below.

LESSOR:

By: _____ (Bianchi)
Name: Leonora Maria Holmes (Bianchi)
Date: _____ 12, 2012

LESSEE:

KNOWLEDGE UNIVERSE EDUCATION LLC,
a Delaware limited liability company

By: _____
Name: Wayne Pipes
Its:    Vice President, Facilities and Development
Date: _____ 1 - 9 - 12

KinderCare #070343 (Walnut Creek, CA)
Second Amendment

EXHIBIT D



December 20, 2013

**_Via Federal Express:_**

Ms. Lenora Holmes
1185 Pine Lane
Clayton, CA  94517

> RE:  Center #070346
> Address:  909 Camino Ramon, Danville, California

Dear Landlord:

This letter is in reference to that certain Lease dated June 13, 1994, as amended and assigned to date (as so amended and assigned, the ("**Lease**"), between Leonora Maria Holmes (Bianchi) ("**Lessor**"), and Knowledge Universe Education LLC, a Delaware limited liability company ("**Lessee**"), as successor to Children's Discovery Centers of America, Inc., for the above-referenced location.

Please be advised that Lessee hereby exercises its option to extend the term of the Lease for an additional three (3) year period commencing July 1, 2014 and ending June 30, 2017 as provided in Section 3 of the First Amendment to Lease.

Should you have any questions, please contact Thomas Kuhn, Director of Real Estate – West, at tkuhn@greenstreetre.com.

Sincerely yours,

Knowledge Universe Education  LLC

Michael Ensing
Executive Vice President, Chief Operating Officer

APPROVED BY LEGAL DEPARTMENT
DATE: _____12/20/13_____
SIGNATURE: _____

EXHIBIT E



May 28, 2014

**_VIA OVERNIGHT COURIER_**

Ms. Leonora Holmes
1185 Pine Lane.
Clayton, CA 94517

      **Re:**   _KinderCare #070346   909 Camino Ramon, Danville, CA 94526_

Dear Mrs. Holmes:

     This letter is in reference to that certain lease dated June 13, 1994 as amended and assigned by and between Leonora Maria Holmes (Bianchi) ("Landlord") and Knowledge Universe Education, LLC, as successor in interest to Children's Discovery Centers of America, Inc. ("Tenant").  As Exclusive Representative of Tenant, Greenstreet Real Estate Partners, L.P. is sending this letter to you on Tenant's behalf.

     The Lease for the referenced location expires June 30, 2017.  However, Tenant will cease operations on or about June 27, 2014.  Contractors hired by Tenant will begin de-imaging, cleaning, and re-keying the facility shortly after Tenant's operations have ceased.

     Please be aware, Tenant will remain responsible for all obligations under the Lease until such time as the Lease has expired. These obligations include the continued payment of rent and other obligated occupancy costs, as well as maintenance obligations for the property under the Lease.

     If you should have questions or concerns, please contact me at 786-464-8347 or via email at vamador@greenstreetre.com . We will be in touch with you in advance of the Lease termination date to discuss final turnover procedures. In the meantime, if you have any questions or concerns, please do not hesitate to contact me.

Sincerely,

Vivianne Amador
Lease Administrator   West Region

Center No. 070346
Danville, CA